## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA L. POLLICK, | : | CIVIL ACTION NO. 1:26-CV-642 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| LACKAWANNA COUNTY | : | |
| PRISON, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Cynthia L. Pollick, a lawyer who has been suspended from the practice of law in this district by ruling of a three-judge panel, asserts civil rights violations against defendants connected to Lackawanna County Prison arising from an allegedly unlawful arrest and imprisonment that occurred earlier this year. Pollick has filed a motion to recuse all judges from this district from presiding over her case. For the reasons that follow, the court finds that recusal of the undersigned is not necessary. The court additionally dismisses Pollick's complaint without prejudice because her claims are only cognizable as habeas corpus claims, and, to the extent the complaint can be liberally construed as a habeas petition, it is subject to dismissal because she has been released from custody and has failed to exhaust state court remedies.

## I.  Factual Background & Procedural History

Pollick filed this case on March 13, 2026. She alleges that she was sleeping in her home on the night of February 21-22, 2026,[1] when her estranged sister, Lisa Lesneski, allegedly "banged on her closed bedroom door." (Doc. 1 at 1). Pollick awoke and immediately called and texted various individuals to "prove her competency" since Lesneski had previously made "false accusations about her mental status and wanted to 302 her" so that Pollick's ex-husband's daughter "would assume [Pollick's] identity." (Id.) Lesneski purportedly "falsely reported a crime" by calling the South Abington Police Department and stating that Pollick "wanted to harm Lesneski." (Id.) Lesneski allegedly declined to pursue prosecution of Pollick and purportedly told police that she was only looking for a report to "strengthen her case" to have Pollick evicted from her own home. (Id. at 2).

Despite Lesneski telling officers she did not wish to have Pollick prosecuted, South Abington Sergeant Leonard Harvey purportedly contacted Attorney Gene Riccardo, whom the complaint alleges was "miraculously the on-call ADA." (Id.) Riccardo allegedly instructed Harvey and other officers to arrest Pollick. (Id.) The complaint alleges that Pollick has previously pursued civil cases against Riccardo and that she had sought a petition for writ of certiorari in one such case shortly before the arrest. (Id.) After receiving these instructions, Harvey and other officers

---

[1] The complaint alleges that the incident began at 9:30 p.m. on February 22, but that she was subsequently booked into Lackawanna County Prison at 1:19 a.m. on February 22. Given the temporal impossibility of this allegation, the court liberally construes the reference to 9:30 p.m. as a reference to 9:30 p.m. on February 21.

present allegedly entered Pollick's bedroom by using a "ballistic shield." (Id. at 2-3). Pollick, believing that a burglary was underway, took photos of the officers. (Id. at 3). Harvey purportedly took Pollick's phone away and pushed her head and neck down while two other officers handcuffed her. (Id.) The officers then purportedly carried her through the house and "threw" her into a police car. (Id.) Pollick was in her pajamas at the time, and officers allegedly failed to bring any winter clothing from her home for her. (Id.)

Pollick was transported to the South Abington Police Department and then transported to Lackawanna County Prison. (Id.) Upon her entry into the prison, she was examined by medical officials, who purportedly required her to take a urine pregnancy test. (Id. at 4). The complaint asserts that this was "absurd" because she was 55 years old at the time of the arrest. (Id.) The complaint further asserts that Pollick was never required to submit to pregnancy tests during previous incarcerations. (Id.)

On February 22, 2026, correctional officer Jordan purportedly "lied" to Pollick by telling her that there was a "water break" that caused her to not have running water in her cell. (Id.) Jordan then purportedly "changed her story" and told Pollick that she needed to submit a urine sample. (Id.) The complaint alleges that Pollick did not have running water in the cell for several days after this. (Id.) She was also purportedly not allowed to shower. (Id.) Pollick allegedly reported these conditions to defendant Betti, the warden of the prison, "to no avail." (Id.) The complaint

alleges that in addition to the issues with water, she was not allowed out of her cell and had to remain there 24 hours a day. (Id.)

On March 2, 2026, Lieutenant Carmonia allegedly came to Pollick's cell and "demanded" a urine sample. (Id. at 5). Pollick states her belief that the urine was needed so that a judge could pass a urine test "since he was arrested for cocaine use with a hooker in Las Vegas." (Id.)

Pollick was scheduled for a preliminary hearing on her criminal charges on March 4, 2026. (Id.) Officials in the prison allegedly failed to provide her with an application form for representation by a public defender prior to the hearing. (Id.) Lieutenant Dranchak came to her cell at 9:30 a.m. to escort her to the hearing, but Pollick refused to leave her cell. (Id. at 5-6). Dranchak filed disciplinary charges against Pollick for refusing to obey an order and sentenced her to fourteen days of solitary confinement. (Id. at 6). This decision purportedly violated prison rules. (Id.) Pollick filed a grievance addressed to defendant Betti about the disciplinary action, but never received a response. (Id.)

The complaint asserts that due to the lack of running water in her cell, Pollick has suffered "mild chemical burns" due to an inability to wash soap off her hands. (Id. at 7). The complaint further asserts that she is at risk of dehydration from the lack of running water. (Id.)

On March 4, 2026, Pollick was brought in front of "Magistrate Gallagher" for her preliminary hearing. (Id.) Gallagher asked her to sign a form waiving objections to a conflict of interest because his brother, Brian Gallagher, was the assistant

4

district attorney who filed charges against her. (Id.) Pollick refused to sign the form, believing that the conflict was non-waivable. (Id. at 7-8). Gallagher purportedly told her that if she did not sign the form, "she'd be back in prison." (Id. at 8). Pollick again refused to sign and asked that the exchange be put on the record. (Id.) The complaint alleges that, as of the date of the complaint, Pollick had not received a preliminary hearing. (Id.)

The complaint seeks "release from LCP" and "invalidation of her only misconduct" as relief. (Id.) The named defendants are Betti, Lackawanna County Prison, and the "Prison Board." (Id. at 1). None of the correctional officers mentioned in the complaint are named as defendants, and Pollick does not seek any damages. (See id. at 1, 8).

Shortly after filing this case, Pollick updated her address to reflect that she is no longer in custody and filed a motion for leave to proceed *in forma pauperis*. (Doc. 5). She then filed a motion to recuse all judges of this district from hearing the case and to have the case referred to a judge from another district. (Doc. 6). Pollick asserts that recusal is warranted because a decision of this district previously suspended her from practicing law in the district. (Id. (citing In re: Investigation for Cause to Initiate Disciplinary Action, No. 1:21-MC-154 (M.D. Pa. filed Feb. 26, 2021). Pollick states "[t]here is no doubt that the district does not find [her] credible" because the previous case was initiated by United States District Judge Malachy E. Mannion and presided over by United States District Judges Yvette Kane, Christopher C. Conner, and Jennifer P. Wilson. (Id.) She further asserts that

5

the court's decision in the previous case is "currently pending the filing of a [petition for] writ of certiorari" to the United States Supreme Court. (Id.)

## II.    **Legal Standard**

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. See 28 U.S.C. § 1915(e)(2);[2] 28 U.S.C. § 1915A.[3] The court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a

---

[2] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
   **(A)** the allegation of poverty is untrue; or
   **(B)** the action or appeal—
      **(i)** is frivolous or malicious;
      **(ii)** fails to state a claim on which relief may be granted; or
      **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[3] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
   **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
   **(2)** seeks monetary relief from a defendant who is immune from such relief.

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

In screening claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Coward v. City of Philadelphia, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); Smith v. Delaware, 236 F. Supp.3d 882, 886 (D. Del. 2017). This standard requires the court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual

7

allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## III.    Discussion

The court will first review Pollick's motion for recusal of all judges in this district. (Doc. 6). Having reviewed the motion, the court finds that recusal is not warranted.

Pollick's motion argues that recusal of all judges in this district is necessary because the court "does not find Plaintiff credible." (Doc. 6 at 2). The undersigned, however, was not a member of this court during the pendency of the disciplinary action docketed at 1:21-MC-154[4] and was not involved in the decision or underlying facts in any way. The undersigned also was not involved in any disciplinary complaints against Pollick prior to her appointment to this court. The undersigned accordingly finds that there is no basis to question her impartiality and will deny the motion for recusal.

---

[4] The undersigned took the bench in January 2025.

Turning to the court's screening review of Pollick's complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A, the court will dismiss it without prejudice. The relief Pollick is seeking—release from jail and invalidation of a misconduct charge—must be sought through a petition for writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

To the extent the complaint can be liberally construed as a petition for writ of habeas corpus, such a claim would now be moot because Pollick has been released from custody. Furthermore, it is clear from Pollick's complaint that she has not exhausted state court remedies prior to filing this case, and she has not shown that "extraordinary circumstances" justify habeas corpus relief in the absence of exhaustion. Moore v. DeYoung, 515 F.2d 437, 443 (3d Cir. 1975) (citing Braden v. 30th Judicial Cir. Ct. of Kentucky, 410 U.S. 484 (1973)).

The complaint is also subject to dismissal to the extent it seeks to invalidate Pollick's disciplinary charges independently from her claim seeking release from jail. The disciplinary sanction imposed on Pollick—fourteen days of disciplinary custody—is not an atypical and significant hardship that would support a claim for violation of Pollick's right to due process. Sandin v. Conner, 515 U.S. 472, 486

(1995). Accordingly, because the complaint does not assert any cognizable claims, it will be dismissed without prejudice.

Before dismissing a civil rights complaint for failure to state a claim, courts must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. The court will deny leave to amend as futile in the instant case because Pollick's complaint does not assert any cognizable civil rights claims.

## IV.    Conclusion

Pollick is granted leave to proceed *in forma pauperis*, her motion for recusal is denied, and her complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A. Pollick will not be granted leave to amend. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    March 30, 2026

10